IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| THE CHURCH OF CHRIST | ) | |
| AT AZALEA DRIVE, | ) | |
| on behalf of itself and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:11-cv-3371-PMD |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| FOREST RIVER, INC., and | ) | |
| STARCRAFT BUS, a Division of | ) | |
| Forest River, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon two motions to compel filed by Plaintiff Church of Christ at Azalea Drive ("Plaintiff"). In both motions to compel, Plaintiff asks the Court to compel Defendants Forest River, Inc., and Starcraft Bus (collectively "Defendants") to produce certain documents in response to Plaintiff's First Requests for Production. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motions.

**BACKGROUND**

Plaintiff filed this action as a putative class action against Defendants on behalf of all South Carolina residents who purchased a Starcraft bus. Plaintiff claims that its 2005 Starcraft XLT bus (a 34-passenger bus) with a Gross Vehicle Weight Rating of 19,500 pounds violates Federal Motor Vehicle Safety Standards ("FMVSS") and 49 C.F.R. § 567.5 because the bus weight exceeds the certification when passenger and cargo weight is taken into account. Plaintiff has alleged a single cause of action for breach of express warranty under S.C. Code Ann. § 36-2-213. Defendants deny all allegations of wrongdoing.

1

The parties jointly sought a stay of these proceedings in order to facilitate potential settlement talks, which might also encompass a potential nationwide settlement. The parties entered into a Memorandum of Understanding on July 24, 2012, that set out the agreed terms under which the parties could explore a possible settlement. When settlement efforts failed, the Court issued a second amended scheduling order that bifurcated class certification discovery and merits discovery. The current motion falls during the discovery phase for class certification.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* If a party fails to produce a requested document, the requesting party may move for an order compelling production. *Id.* 37(a)(3)(B). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* 26(b)(1). "The party opposing a motion to compel bears the burden of showing why it should not be granted." *Beazer Homes Corp. v. Hartford Fire Ins. Co.*, C.A. No. 4:10-cv-2419-RBH-TER, 2012 WL 6210323, at *4 (D.S.C. Dec. 13, 2012).

## ANALYSIS

### I.     Plaintiff's Request for Production No. 15

In both its first and second motions, Plaintiff moves to compel Defendants to respond fully to Request No. 15, which asks for:

2

> All owner reports, complaints, communications, consumer letters, customer complaints, fleet complaints, electronic dealer service reports, and service investigation reports, insurance reports and claims, engineering reports, vehicle owner questionnaires, surveys, memoranda, and emails or other communications concerning the subject vehicles.

The term "subject vehicles" is defined in Plaintiff's Request for Production as "all of your buses sold to South Carolina purchasers." In response, Defendants produced four pages of documents relating to only the Starcraft XLT bus purchased by Plaintiff. In its first motion to compel, Plaintiff argues that Defendants' narrowing of their responses to only the XLT model was improper because the case involves Defendants' certification protocol across its entire Starcraft bus inventory. Following receipt of Plaintiff's first motion to compel, Defendants supplemented their responses to Request No. 15 by turning over correspondence with two other owners of Starcraft buses. Plaintiff then filed its second motion to compel, requesting that Defendants provide complete bus files for XLT buses sold to South Carolina residents. Plaintiff complains that despite a letter from Defendants' counsel dated March 22, 2013, in which counsel explained that "[f]or class certification discovery purposes, Forest River considers XLT model buses (like Plaintiff's bus) sold in South Carolina to South Carolina residents to be the 'subject vehicles,'" Defendants refuse to provide bus files for all XLTs sold to South Carolina residents.

In response to Plaintiff's first motion, Defendants argue that Plaintiff's request is wholly overbroad and unduly burdensome, without limitation to time, geography, or similarity to Plaintiff's Starcraft XLT bus. Defendants maintain that XLT model buses sold in South Carolina to South Carolina residents are the only potentially relevant buses to Plaintiff's bus, and thus any broader interpretation is unduly burdensome and an erroneous use of discovery at the class certification stage. However, in response to Plaintiff's second motion, Defendants argue that discovery on buses other than Plaintiff's own XLT bus should not be permitted because those files are not needed to address class certification Rule 23 requirements. According to

3

Defendants, numerous discovery tools exist to conduct discovery on the issue of their certification protocol without delving into files of other buses that were purchased by absent class members.  Finally, Defendants argue that Plaintiff's request is not reasonably limited in time or date of manufacture and that any document dating back to 2002 is beyond the scope of permissible discovery because the statute of limitations is six years.

During this pre-certification stage of discovery, the question before the Court is "whether the information and documents sought by the plaintiff can be rightly characterized as necessary to assist the Court in its decision whether or not to certify the class"—that is, whether they shed light on the class certification Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation.  *Griffin v. Harley Davidson Credit Corp.*, C.A. No. 8:08-cv-466-HFF-BHH, 2010 WL 233764, at *2 (D.S.C. Jan. 24, 2010).  In its second motion, Plaintiff contends that the requested documents relating to XLT buses sold to South Carolina residents may reveal problems inherent in Defendants' certification protocols, which would be highly relevant to the issue of commonality under Rule 23.  The Court agrees and also finds that such documents may aid the Court in making its determination regarding numerosity and typicality.  In making class action findings, this Court cannot simply accept at face value the Complaint's allegation that the same certification techniques were uniformly applied to all buses.  *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (overruling district court for simply accepting allegations of complaint at face value in making class action findings).  Thus, the Court concludes that information regarding the certification process for other buses sold to South Carolina residents is discoverable.

In its first motion, Plaintiff maintains that it is entitled to discovery related to the improper certification protocol for all Starcraft buses, regardless of whether the particular model was sold in South Carolina.  The Court disagrees.  The Complaint describes the proposed class as

4

"all South Carolina residents who purchased a Starcraft bus." Therefore, the Court fails to see how discovery related to bus models that were never sold to South Carolina residents could aid the Court in determining whether or not to certify the class. The Court agrees with Defendants that Request No. 15 should be limited in geographical scope, at least at this stage of discovery, and thus will limit production to buses that were sold to current South Carolina residents.

However, the Court does not agree with Defendants' position that only the XLT model is relevant at this stage in discovery. At the status conference held on March 11, 2013, the parties disagreed about whether or not the scope of this putative class action should include both large and small models of Starcraft buses. It is clear from the memoranda currently before the Court that this dispute remains unresolved. Thus, at the certification stage, the Court most likely will have to determine whether or not to include South Carolina purchasers of non-XLT model buses within the class or a subclass. Accordingly, the Court concludes that Plaintiff should be permitted to conduct discovery on all models of Starcraft buses that were purchased by current South Carolina residents. *See Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) (observing that "discovery is likely warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action, such as whether a class or set of subclasses exist[s]"). Accordingly, the Court grants Plaintiff's motion to compel Defendants to produce "[a]ll owner reports, complaints, communications, consumer letters, customer complaints, fleet complaints, electronic dealer service reports, and service investigation reports, insurance reports and claims, engineering reports, vehicle owner questionnaires, surveys, memoranda, and emails or other communications" from 2002[1] to the present relating to all Starcraft buses purchased by current South Carolina residents.

---

[1] The Court is not persuaded by Defendants' argument that 2002 is beyond the scope of this case because the relevant statute of limitations is six years. Under S.C. Code. Ann. § 36-2-725(2), a "cause of action accrues for

## II.     Plaintiff's Request for Production No. 19

In its first motion, Plaintiff moves to compel Defendants to respond fully to Request No. 19, which asks for "All documents relating to FMVSS compliance for the subject vehicles." According to Plaintiff, Defendants failed to produce spreadsheets detailing their FMVSS certification protocol. Plaintiff contends that these spreadsheets are not work product because Defendants collected and compiled the data to comply with their regulatory obligations to the federal government and not solely in anticipation of litigation. Plaintiff further argues that even if the spreadsheets are work product, Plaintiff possesses substantial need for the purely factual information contained in the spreadsheets in order to prepare its case and is unable, without undue hardship, to obtain equivalent materials by other means.

Defendants respond that the spreadsheets are protected by both the attorney-client privilege and the work product doctrine because they were prepared upon defense counsel's request after litigation had begun. According to Defendants, the spreadsheets were not created in the ordinary course of business, but rather were created after Defendants initially received and responded to Request Nos. 15 and 19 in 2012. Because Defendants' counsel specifically requested that certain data be compiled in spreadsheet form to help counsel discuss defenses and litigation strategy with Defendants, they contend that the spreadsheets are protected attorney-client communication.

The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The privilege is meant to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration

---

breach of warranty when the breach is or should have been discovered." Thus, information dating back to 2002 may be relevant where the alleged breach of warranty was not discovered until years after the sale.

of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The attorney-client privilege "protects not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer and the gathering of information by the attorney to enable him to give informed advice." *AVX Corp. v. Horry Land Co., Inc.*, C.A. No. 4:07-cv-3299-TLW-TER, 2010 WL 4884903, at * 4 (D.S.C. Nov. 24, 2010) (quotations and citations omitted).  "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."  *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

Defendants contend that the spreadsheets were created to enable defense counsel to advise Defendants on litigation strategy and the possibility of settlement.  In a declaration, the general manager of Starcraft Bus asserted that after the filing of this lawsuit, Defendants' attorney requested that particular information be pulled from the files of Starcraft Bus, that certain calculations be made using variables he requested, and that the data be compiled in a certain way to aid his analysis.  Accordingly, Starcraft Bus employees compiled the requested information in the spreadsheets now requested by Plaintiff.  The general manager further averred that the spreadsheets have never been shared with any third party or government agency, were not used in the normal course of business, and were not required by any regulatory agency. There is no evidence contradicting the general manager's assertions.

The Court concludes that the spreadsheets are protected by the attorney-client privilege. The specific data was compiled and calculations were made at the request of counsel following the commencement of litigation and for the purpose of rendering legal advice regarding this case. Furthermore, there is no evidence that the spreadsheets have ever been disclosed to a third party. Under these facts, the Court concludes that the spreadsheets are protected from disclosure and thus denies Plaintiff's motion to compel production of these spreadsheets.  *See In re Air Crash at*

*Charlotte, N.C. on July 2, 1994*, 982 F. Supp. 1052, 1054 (D.S.C. 1995) (denying motion to compel data compilations that were calculations made at the request of counsel in preparation for litigation where movants had been provided with the raw data upon which the calculations were made). However, the Court finds that the raw data relating to FMVSS certification of South Carolina buses upon which Defendants drew to create the spreadsheets is not protected by the privilege and is responsive to Request No. 19. *See id.* Thus, to the extent that Defendants have not produced non-privileged documents containing raw data relating to FMVSS compliance for Starcraft buses sold to South Carolina residents, Defendants must produce those documents to Plaintiff.[2]

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Second Motion to Compel Defendants' Production of Documents be **GRANTED**, and that Plaintiff's First Motion to Compel Production of Defendants' Documents be **DENIED** as to Defendants' spreadsheets but be **GRANTED** as to the documents requested in Request No. 15 dating from 2002 to the present and relating to all Starcraft buses purchased by current South Carolina residents. Defendants will have fifteen (15) days from the date of this order to produce the documents.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**May 23, 2013**
**Charleston, SC**

---

[2] In light of the Court's conclusion that the spreadsheets are protected by the attorney-client privilege, the Court does not reach the issue of whether the spreadsheets also are protected by the work product doctrine.